**BROWN, LLC**
Nicholas Conlon (034052013)
Michael Rinderman (admitted Pro Hac Vice)
111 Town Square Place, Suite 400
Jersey City, NJ 07310
T: (877) 561-0000 | F: (855) 582-5279
nicholasconlon@jtblawgroup.com
michael.rinderman@jtblawgroup.com
Counsel for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MONICA HAMPTON, individually and on behalf of all others similarly situated,

*Plaintiff,*

v.

INNOPHOS, INC.,

*Defendant.*

Civil Action No.: 3:26-cv-07929-RK-JBD

JURY TRIAL DEMANDED

**FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT**

Plaintiff Monica Hampton ("Plaintiff"), individually and on behalf of all others similarly situated, by and through counsel, BROWN, LLC, alleges as follows:

## INTRODUCTION

1. This is a collective and class action on behalf of Plaintiff Monica Hampton ("Plaintiff") and all others similarly situated who work or worked for Defendant Innophos, Inc. ("Defendant") as hourly-paid, non-exempt manufacturing, production, packaging, operations, and related employees ("manufacturing employees"), to recover unpaid overtime compensation under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq., and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 et seq.

2. Defendant excludes required pre-shift and post-shift time from paid hours, including protective-equipment retrieval and changing before clock-in, removal and return after clock-out, and compensable work performed during portions of employees' recorded time that Defendant excludes through rounding. Defendant also fails to pay the full statutory overtime attributable to non-excludable Team Incentive Bonus compensation and ordinary seventy-cent second-shift compensation identified as "0.70 Chicago H."

3. Plaintiff brings the FLSA claim individually and on behalf of similarly situated manufacturing employees who elect to opt in under 29 U.S.C. § 216(b), seeking unpaid overtime, an equal amount as liquidated damages, and reasonable attorneys' fees and costs.

4. Plaintiff brings the IMWL claim individually and under Federal Rule of Civil Procedure 23 on behalf of the Illinois Class, seeking statutory overtime, treble underpayments, five-percent monthly statutory damages, reasonable attorneys' fees and costs, and other authorized relief, with overlapping wage amounts allocated to avoid double recovery.

5. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b), individually and on behalf of a putative "FLSA Collective," defined as:

> All hourly-paid, non-exempt manufacturing employees employed by Innophos, Inc. in the United States at any time within the three (3) years preceding the filing of the original Complaint on June 30, 2026 through the date of final judgment.

6. Plaintiff seeks to send notice pursuant to 29 U.S.C. § 216(b) to all similarly situated hourly-paid, non-exempt manufacturing employees of Defendant, informing them of their right to opt in to this action and assert claims under the FLSA.

7. Plaintiff asserts her IMWL claim individually and pursuant to Federal Rule of Civil Procedure 23 on behalf of a putative "Illinois Class," defined as:

> All hourly-paid, non-exempt manufacturing employees employed by Innophos, Inc. in Illinois at any time during the three (3) years preceding the filing of the original Complaint on June 30, 2026 through the date of final judgment.

8. Both definitions begin on June 30, 2023. The FLSA Collective definition is subject to each employee's individual commencement date, opt-in timing, the applicable two-year or three-year limitations period, and any applicable tolling under 29 U.S.C. §§ 255–256; each employee's recoverable period is determined separately.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over the FLSA claim under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), and supplemental jurisdiction over the IMWL claim under 28 U.S.C. § 1367 because the claims arise from a common nucleus of operative facts. The Court also has jurisdiction over the state-law claim under 28 U.S.C. §§ 1332(a)(1) and 1332(d)(2), as additional and independent bases.

10. Plaintiff Monica Hampton is a citizen of Illinois and is domiciled in Cook County, Illinois. She was a citizen and domiciliary of Illinois when this action commenced on June 30, 2026.

11. Defendant Innophos, Inc. is incorporated in Delaware and has its principal place of business in Cranbury, New Jersey, where its corporate headquarters directs and controls its business. Defendant was incorporated in Delaware and had its principal place of business in New Jersey when this action commenced. Defendant is therefore a citizen of Delaware and New Jersey for diversity purposes.

12. Complete diversity exists between Plaintiff and Defendant. When this action commenced on June 30, 2026, the amount in controversy on Plaintiff's individual IMWL claim

exceeded $75,000, exclusive of interest and costs, including the unpaid overtime, statutory treble and monthly damages, and reasonable attorneys' fees recoverable under 820 ILCS 105/12(a). The attorneys' fees included in that amount encompass both fees already incurred and fees reasonably anticipated, as of commencement, to be incurred thereafter in prosecuting Plaintiff's individual IMWL claim. Plaintiff's individual claim satisfies the jurisdictional threshold without aggregating other employees' claims or including fees attributable solely to their claims.

13. This action also satisfies the Class Action Fairness Act ("CAFA"). Plaintiff brings the IMWL claim as a class action under Federal Rule of Civil Procedure 23. The proposed Illinois Class comprises at least 100 members, and the aggregate amount placed in controversy by its claims when this action commenced exceeded $5,000,000, exclusive of interest and costs, including unpaid overtime, statutory treble and monthly damages, and recoverable attorneys' fees. Minimal diversity exists because Plaintiff, a member of that class, is an Illinois citizen and Defendant is a citizen of Delaware and New Jersey. The class claims are aggregated under 28 U.S.C. § 1332(d)(6).

14. The Court has personal jurisdiction over Defendant because Defendant maintains its corporate headquarters and principal corporate office in New Jersey, conducts business from New Jersey, and employs hourly-paid, non-exempt manufacturing employees whose wages are governed by Defendant's timekeeping and payroll practices.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in, were directed from, or were controlled from this District.

## PARTIES

**Defendant**

16. Defendant is a business entity that manufactures phosphate and non-phosphate ingredients for the food, health, nutrition, and industrial end markets.

17. Defendant is a Delaware corporation with its corporate headquarters and principal corporate office at 259 Prospect Plains Road, Building A, Cranbury, New Jersey 08512.

18. Defendant conducts substantial business from New Jersey and operates manufacturing facilities, including the Chicago Heights, Illinois facility where Plaintiff performs manufacturing work.

**Plaintiff**

19. Plaintiff Monica Hampton is a citizen and domiciliary of Illinois residing in Cook County, Illinois.

20. Plaintiff has been employed by Defendant since approximately October 2023.

21. Plaintiff works for Defendant as an hourly-paid, non-exempt manufacturing employee, including as an Operator and Packager.

22. Plaintiff performs work for Defendant at Defendant's Chicago Heights, Illinois manufacturing facility.

23. Plaintiff is paid on an hourly basis and is subject to Defendant's timekeeping and payroll policies.

24. Plaintiff's written consent to become a party plaintiff under 29 U.S.C. § 216(b) was filed with the original Complaint on June 30, 2026. See ECF No. 1-1.

## FACTUAL ALLEGATIONS[1]

**Defendant's Business and Coverage**

25. Defendant manufactures phosphate and non-phosphate ingredients for the food, health, nutrition, and industrial end markets.

26. Defendant operates manufacturing facilities, including the Chicago Heights, Illinois facility where Plaintiff and other hourly-paid, non-exempt manufacturing employees perform work.

27. Defendant employs hourly-paid, non-exempt manufacturing employees to perform production, packaging, operations, and related manufacturing work.

28. Defendant operates manufacturing facilities in multiple states, including Illinois.

29. Defendant employs hourly-paid, non-exempt manufacturing employees at manufacturing facilities throughout the United States.

30. Defendant maintains, administers, approves, or controls common timekeeping, payroll, overtime, regular-rate, clock-in, clock-out, rounding, and wage-payment practices for hourly-paid, non-exempt manufacturing employees.

31. Defendant maintains, administers, approves, or controls common safety, security, access-control, PPE, uniform, and plant-access requirements for hourly-paid, non-exempt manufacturing employees.

32. Hourly-paid, non-exempt manufacturing employees are identifiable from Defendant's payroll, timekeeping, personnel, job-title, classification, and location records.

33. Defendant is an enterprise engaged in commerce within the meaning of the FLSA.

---

[1] The allegations in this Complaint, unless otherwise specified, refer to the time period of three years prior to the commencement of this action through the present.

34. Defendant has employees engaged in commerce or in the production of goods for commerce, and has employees handling, selling, or otherwise working on goods or materials that have moved in or were produced for commerce.

35. Defendant's annual gross volume of sales made or business done is not less than $500,000.

36. Defendant is the employer of hourly-paid, non-exempt manufacturing employees within the meaning of the FLSA and the IMWL.

**Common Employment and Pay Practices**

37. Defendant manufactures phosphate and other ingredients for food and industrial uses and operates manufacturing facilities in multiple states, including Illinois. Manufacturing employees operate manufacturing and packaging equipment, monitor processes, package product, and perform related production duties. Plaintiff works at Defendant's Chicago Heights, Illinois plant.

38. Defendant classifies manufacturing employees as hourly-paid and non-exempt, records their time electronically, and pays them through its payroll system. Defendant uses common payroll earnings codes for manufacturing employees, including the codes described below.

39. Manufacturing employees work rotating shifts, including 6:30 a.m. to 2:30 p.m., 2:30 p.m. to 10:30 p.m., and 10:30 p.m. to 6:30 a.m. (which do not include meal breaks). They also work extended shifts and workweeks exceeding forty hours.

40. Defendant pays manufacturing employees an hourly base wage and additional compensation, including second-shift compensation identified as "0.70 Chicago H" and

incentive compensation identified as “Team Incentive.” The challenged additional compensation is remuneration for employment.

41. Plaintiff is representative of manufacturing employees. She began working for Defendant at Chicago Heights in approximately October 2023 in operator and packaging positions. Defendant subjects her to the same plant-entry, PPE, departmental timeclock, rounding, and payroll practices described below and pays her the same challenged types of compensation.

42. Plaintiff works rotating shifts and workweeks exceeding forty hours.

43. As a Packager, Plaintiff operated bagging or drum machines, packaged material into bags or drums, and palletized product. Her operator duties also included production and process monitoring.

44. Defendant maintains or controls the challenged timekeeping and payroll practices for manufacturing employees. Manufacturing employees at Defendant’s other facilities are subject to the same or similar challenged practices.

**Common PPE and Plant Requirements**

45. Defendant requires manufacturing employees to wear personal protective equipment (“PPE”), including a hard hat, safety glasses, company-provided work clothing, protective work shoes, and the additional protective items applicable to their work areas, including hair coverings, hearing protection, gloves, and beard coverings where applicable.

46. Defendant’s written good manufacturing practice (“GMP”) rules require work shoes and uniforms to remain in the plant, require daily uniform changes, and require hair and beard coverings in processing and packaging areas. Defendant supplies uniforms through a plant-based laundering and distribution arrangement and provides receptacles for soiled uniforms.

47. Defendant stores manufacturing employees' hard hats and safety glasses in personalized PPE lockers at the security entrance. Manufacturing employees must retrieve and put on those items before passing into the plant area containing their departmental timeclocks. Defendant posts PPE requirements and a warning that violations can result in disciplinary action at that entrance.

48. Defendant places uniform storage and changing facilities between the entrance PPE area and the departmental timeclocks. Supervisors direct manufacturing employees to use the clock assigned to their area or department.

49. These requirements protect employees in Defendant's chemical-manufacturing environment and protect the food-grade products manufactured and packaged there from contamination. The required protective items are used in performing manufacturing work, and employees cannot dispense with the required protection in the manufacturing areas. The required retrieval, changing, storage, and travel steps form part of Defendant's prescribed onsite manufacturing process.

**Required Activities Before Clock In and Before the Credited Start**

50. Before clocking in, manufacturing employees badge through Defendant's security entrance, retrieve and put on their required hard hats, safety glasses, and initial protective items, and travel along Defendant's prescribed route toward their departments.

51. Defendant requires manufacturing employees to obtain their company-provided uniforms, use the onsite changing facilities, put on the required uniform and work shoes, and then travel to their departmental timeclocks.

52. Defendant does not permit manufacturing employees to reach the production-area timeclocks without the PPE required to enter that area. Their separate entrance badge records do

not start their paid time. The required entrance, PPE, changing, and travel steps described above therefore occur before their timeclock punches.

53. Defendant also prohibits manufacturing employees from punching in more than seven minutes before their scheduled start. Employees who complete the required preliminary sequence before the allowed punch time must wait at the timeclock for the permitted window. For a 2:30 p.m. shift, the earliest permitted punch is 2:23 p.m.

54. After punching in, manufacturing employees perform compensable work associated with commencing their shifts. Such work includes, for example, receiving shift reports, discussing production and equipment conditions, participating in shift handoffs, and beginning assigned manufacturing, production, packaging, or process-monitoring duties. Shift handoffs may involve proceeding to a control room to receive reports concerning events during the preceding shift, production conditions, and equipment problems. They may also include explanations concerning pumps or other equipment and, when necessary, walking to the affected equipment to discuss or demonstrate a problem.

55. Manufacturing employees perform compensable work during intervals between their actual early clock-in times and their rounded, credited start times. Such work includes, for example, receiving shift reports, discussing equipment conditions, participating in shift handoffs, and beginning assigned manufacturing, production, packaging, or process-monitoring duties. For a 2:30 p.m. shift, actual punches from 2:23 through 2:29 p.m. round forward to 2:30 p.m. Defendant excludes compensable work performed during those intervals from paid hours.

**Required Activities After the Credited Stop and After Clock Out**

56. Manufacturing employees also perform work duties near the ends of their shifts, including, for example, continuing manufacturing, production, packaging, or process-monitoring

activities; remaining responsible for assigned work while awaiting relief; and providing incoming employees with reports concerning the shift's events, problems, and equipment conditions. These activities may involve walking downstairs or to a pump or other equipment to explain or demonstrate a problem. Manufacturing employees also perform housekeeping and cleanup duties, including cleanup or assistance associated with conditions discussed during shift turnover.

57. The work duties described above may extend beyond the scheduled shift end. Manufacturing employees performing those duties remain on duty and clocked in while completing them, and Defendant knows or has reason to know of their continued work, including manufacturing, production, packaging, process monitoring, shift handoffs, housekeeping, and cleanup. After completing their applicable duties, manufacturing employees proceed to their assigned timeclocks and punch out before undertaking required post-clock-out exit and protective-equipment activities.

58. When Defendant rounds an actual clock-out backward, it excludes compensable work performed between the credited stop time and actual clock-out. For example, under the posted chart, a 2:35 p.m. clock-out rounds to 2:30 p.m. During that interval, manufacturing employees may continue performing assigned work, including, for example, production, packaging, process monitoring, shift handoffs, equipment explanations, housekeeping, or cleanup. Defendant excludes time spent performing such work from paid hours, including any associated travel between work areas or to equipment necessary to perform the work.

59. After clocking out, manufacturing employees travel from their departments toward the changing facilities and entrance PPE lockers. Defendant requires manufacturing employees to remove their work clothing and shoes onsite and place soiled uniforms in the

designated laundering receptacle or storage location. They then continue to the security area to remove and return their hard hats and safety glasses to the PPE lockers and badge out of the facility.

60. The hat-and-glasses return is a required final onsite step. Manufacturing employees cannot complete it before traveling back through the plant from their departmental clocks because Defendant requires those items to remain on while they are in the plant. Defendant does not record or pay the required travel, changing, storage, PPE-return, and exit time following actual clock-out. This after-punch interval is separate from the production, relief, handoff, equipment explanation, and cleanup before actual clock-out.

**Rounding and Attendance Restrictions Cause Unpaid Time**

61. Defendant programs its UKG/Kronos timekeeping system to round actual punches to the nearest quarter hour. A punch on the quarter hour remains unchanged. The posted "Hourly Rounding Rules – CH" applies the rounding chart to all punches and instructs employees to punch within a seven-minute window at the beginning and end of the shift.

62. The posted rule states that an early or late punch creates an exception to the standard schedule requiring supervisory adjustment, and that rounding does not remove responsibility for arriving late or leaving early. Manufacturing employees are instructed to punch out on time and notify supervision when they must punch out later.

63. The seven-minute early-clock-in restriction prevents manufacturing employees from making an authorized early punch far enough before the scheduled start to receive favorable rounding to the preceding quarter hour. Their permitted early punches instead round forward to the scheduled start.

64. Defendant enforces timely arrival through attendance points. Manufacturing employees incur a quarter-point attendance penalty for arriving late, even when Defendant's rounding practice credits their start time back to the scheduled shift start. Manufacturing employees therefore cannot routinely obtain offsetting start-time credits by arriving after the shift begins without violating Defendant's attendance requirements.

65. At the ends of their shifts, manufacturing employees must complete their assigned work duties before leaving. These duties include, for example, continuing manufacturing, production, packaging, or process-monitoring activities, remaining on duty while awaiting relief, providing shift reports, explaining equipment conditions, and performing housekeeping or cleanup. The posted attendance rule continues to apply to early departures. When manufacturing employees perform compensable work after their scheduled shift ends and punch out within seven minutes after that end, Defendant rounds their punches backward and excludes the additional compensable work from paid hours. Punches outside the standard window require the supervisory exception process.

66. These restrictions operate together: Defendant limits authorized early punches to the interval that rounds forward, disciplines lateness and early departure, and uses a standard end-of-shift window that rounds post-shift punches backward. These punch-window and attendance restrictions repeatedly cause Defendant to exclude compensable work performed between manufacturing employees' actual punches and their credited start and stop times, without commensurate favorable rounding over time. As a result, manufacturing employees are underpaid in the aggregate for compensable time actually worked. The required activities performed before clock-in and after clock-out produce additional, separate unpaid time.

67. The additional entrance, PPE, changing, and return time outside the punches is omitted altogether. That time never enters the timeclock interval to which the rounding chart is applied, and it is distinct from the required time within the punches that rounding removes.

68. Plaintiff follows the same entrance/PPE requirements, uses the departmental clocks, and performs the same prescribed return and exit steps as other manufacturing employees.

**Overtime Underpayment from Excluded Time**

69. Plaintiff and other manufacturing employees work scheduled shifts totaling approximately forty (40) hours in one or more workweeks and workweeks exceeding forty (40) hours, including extended shifts. When compensable pre-shift and post-shift time is included, they work more than forty (40) hours in affected workweeks without receiving all statutory overtime due.

70. In workweeks in which Plaintiff and other manufacturing employees already work more than forty (40) recorded or credited hours, the excluded compensable time results in additional unpaid overtime.

71. Plaintiff works rotating eight-hour shifts from approximately 6:30 a.m. to 2:30 p.m., 2:30 p.m. to 10:30 p.m., or 10:30 p.m. to 6:30 a.m., on rotating workdays throughout the week rather than a fixed Monday-through-Friday schedule. She works the full eight hours without an unpaid, duty-free meal period and also works extended shifts of approximately twelve hours. Her schedule includes workweeks of five eight-hour shifts, totaling forty (40) scheduled hours, and workweeks of six eight-hour shifts, totaling forty-eight (48) scheduled hours.

72. During those same workweeks, Plaintiff additionally performs the required pre-shift and post-shift activities described above, including retrieving, putting on, removing, and

returning required PPE outside her recorded time, and performs compensable work that Defendant excludes through rounding. These activities add compensable minutes to her workday beyond the hours Defendant credits and pays.

73. For example, for the pay period April 27 through May 10, 2026, paid May 15, 2026, Defendant paid Plaintiff for eighty (80) regular hours and eight (8) overtime hours, totaling eighty-eight (88) paid hours. During at least one workweek within that pay period, Plaintiff worked at least forty (40) paid hours and also performed the required pre-shift and post-shift work described above, causing her actual hours worked to exceed forty (40). Defendant omitted that additional compensable time and failed to pay Plaintiff all overtime compensation due for that workweek.

74. Defendant controls the required procedures and knows or has reason to know that manufacturing employees perform the described activities, including duties while clocked in and protective activities outside the punches. The work is recurring and performed at Defendant's premises or prescribed places of work. Its omission understates the total hours used to calculate statutory overtime.

**Regular Rate Underpayment for the Seventy Cent Shift Payments**

75. Defendant pays manufacturing employees additional hourly compensation for second-shift work and identifies that compensation on their earnings statements as "0.70 Chicago H." The ordinary payment is seventy cents for each covered hour worked, in addition to the employee's base wage.

76. These ordinary seventy-cent payments compensate employees for working the designated shift. They are not gifts or reimbursements and are not, merely by virtue of being shift payments, overtime premiums that may be excluded from the regular rate.

77. Defendant pays manufacturing employees overtime at rates based on their base hourly wages without consistently including all non-excludable “0.70 Chicago H” compensation in the regular rates for the workweeks in which that compensation is earned. As a result, manufacturing employees receive less than the full statutory overtime compensation due in affected workweeks.

78. For example, for the pay period November 11 through November 24, 2024, paid November 29, 2024, Defendant paid Plaintiff for eighty (80) regular hours at $37.58 per hour, eight (8) overtime hours at $56.37 per hour, and thirty-two (32) hours of “0.70 Chicago H” compensation at $0.70 per hour, totaling $22.40 in additional shift compensation. The overtime rate Defendant paid was exactly one and one-half times Plaintiff’s base hourly wage. Plaintiff worked more than forty (40) hours in at least one workweek during that pay period. Defendant failed to include all non-excludable seventy-cent shift compensation attributable to an overtime workweek in Plaintiff’s regular rate for that week and failed to pay the full resulting statutory overtime compensation.

79. For the pay period April 27 through May 10, 2026, paid May 15, 2026, Defendant similarly paid Plaintiff for eighty (80) regular hours at $31.05 per hour, eight (8) overtime hours at $46.575 per hour, and thirty-two (32) hours of “0.70 Chicago H” compensation at $0.70 per hour, totaling $22.40 in additional shift compensation. The overtime rate Defendant paid was exactly one and one-half times Plaintiff’s base hourly wage. Plaintiff worked more than forty (40) hours in at least one workweek during that pay period. Defendant likewise failed to include all non-excludable seventy-cent shift compensation attributable to an overtime workweek in Plaintiff’s regular rate for that week and failed to pay the full resulting statutory overtime compensation.

**Regular Rate Underpayment for the Team Incentive Bonus**

80. Defendant pays participating manufacturing employees recurring annual performance compensation identified on their statements as "Team Incentive." Defendant communicates that the incentive compensation is based on company performance and establishes performance goals and target awards for participating employees.

81. Defendant's written Incentive Bonus Plan describes target awards for non-exempt participants as a percentage of "eligible earnings"—a term the Plan does not define—for a calendar Plan Year, ties awards to established performance goals, and describes a written participant payout schedule. Manufacturing employees expect incentive compensation based on the announced arrangement and their continued qualifying work. The Team Incentive payments at issue constitute compensation for services under that arrangement and are not payments whose fact and amount remain wholly discretionary at or near the end of the earning period.

82. Plaintiff received a Team Incentive payment of $139.31 on March 7, 2024 and a Team Incentive payment of $648.14 on March 13, 2025. Defendant failed to pay the full additional overtime compensation attributable to those incentive payments. Plaintiff worked statutory overtime during workweeks in the annual earning periods to which the incentive payments related.

83. Defendant fails to include all non-excludable Team Incentive compensation in the regular rates for the workweeks in which manufacturing employees earn it and fails to pay the full resulting additional overtime. Defendant's payment of the incentive itself does not fully discharge the overtime obligation attributable to that compensation.

**Defendant's Knowledge and Willfulness**

84. Defendant establishes and controls the PPE and plant-access requirements, clock locations, seven-minute punch window, rounding rules, supervisory adjustment process, attendance enforcement, and payroll calculations. Defendant posts the requirements, threatens discipline for PPE violations, and requires manufacturing employees to perform the work described above.

85. Defendant knows or has reason to know of the before-punch and after-punch protective routines, such as the required operator handoffs and continued work, and the effect of its punch-window and rounding rules on recorded time. Defendant also controls the earnings codes and calculations used to pay Team Incentive and ordinary "0.70 Chicago H" compensation and overtime.

86. Defendant's failure to pay the full statutory overtime due from these timekeeping and regular-rate practices is knowing or in reckless disregard of the FLSA's requirements. Its violations are willful and are not undertaken in good faith.

**COLLECTIVE ACTION ALLEGATIONS**

87. Plaintiff re-alleges and incorporates all previous paragraphs herein.

88. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of the FLSA Collective defined above with respect to the wage-and-hour claims.

89. Plaintiff and other members of the FLSA Collective regularly work more than forty (40) hours in a workweek as suffered or permitted by Defendant.

90. Defendant subjects Plaintiff and other members of the FLSA Collective to uniform and unlawful timekeeping and payroll practices that result in employees not being paid

for all compensable work time and not receiving all overtime compensation required by the FLSA.

91. These unlawful practices arise from common timekeeping, clock-in window, rounding, and payroll practices applied to hourly-paid, non-exempt manufacturing employees, not discretionary decisions unique to individual employees.

92. Defendant fails to pay Plaintiff and other members of the FLSA Collective overtime compensation at a rate not less than one and one-half (1.5) times their regular rates of pay for all hours worked in excess of forty (40) in a workweek, as required by the FLSA.

93. As a result of Defendant's unlawful practices, in many workweeks, Plaintiff and other members of the FLSA Collective work more than forty (40) hours but are not paid all overtime compensation at the required premium rate.

94. Defendant's conduct and practices are willful and not undertaken in good faith.

95. Defendant knows, or recklessly disregards, that its timekeeping and payroll practices result in employees not being paid for all compensable work time and proper overtime compensation under the FLSA.

96. Plaintiff and other members of the FLSA Collective are subjected to the same common unlawful policies and practices that violate the FLSA.

97. With respect to the claims set forth herein, a collective action under the FLSA is appropriate because Plaintiff and the members of the FLSA Collective are similarly situated within the meaning of 29 U.S.C. § 216(b).

98. Plaintiff and the members of the FLSA Collective are similarly situated because they are hourly-paid, non-exempt manufacturing employees who are subject to the same or

similar timekeeping and payroll practices, and their claims arise from the same factual and legal theories.

99. The members of the FLSA Collective are identifiable from Defendant's payroll, timekeeping, personnel, job-title, classification, and location records, and their claims can be evaluated through common proof concerning Defendant's timekeeping, payroll, overtime, regular-rate, clock-in, clock-out, rounding, PPE, uniform, security, access-control, and wage-payment practices.

100. Defendant's common payroll practices also result in overtime underpayment by failing to include all non-excludable Team Incentive Bonus and ordinary "0.70 Chicago H" remuneration in the regular rates and failing to pay the full resulting overtime balance.

101. Plaintiff estimates that the FLSA Collective consists of numerous similarly situated hourly-paid, non-exempt manufacturing employees, and the precise number of FLSA Collective members is readily ascertainable from Defendant's payroll and personnel records.

102. The identity of the members of the FLSA Collective, the hours they work, and the wages paid to them are ascertainable from Defendant's payroll, timekeeping, and personnel records.

103. Common proof includes Defendant's corporate control of timekeeping and payroll, its incentive framework and earnings codes, and the written rounding notice, departmental-clock directions, PPE storage locations, and written good manufacturing practice requirements. Individual differences in physical layout, specific protective steps, compensation received, and damages do not eliminate the common challenged timekeeping and payroll issues.

**RULE 23 CLASS ACTION ALLEGATIONS**

104. Plaintiff re-alleges and incorporates all previous paragraphs herein.

105. Plaintiff seeks to pursue her IMWL claim individually and pursuant to Federal Rule of Civil Procedure 23 as an opt-out class action on behalf of the Illinois Class.

106. Plaintiff brings this class action to recover unpaid statutory overtime, treble underpayments, five-percent monthly statutory damages, reasonable attorneys' fees and costs, and other relief authorized under the IMWL, without duplicate recovery of the same wages.

107. The identity of the members of the Illinois Class, the hours they work, and the wages paid to them are ascertainable from Defendant's payroll, timekeeping, and personnel records, and damages can be determined through common proof.

108. The members of the Illinois Class are so numerous that joinder of all Class members is impracticable. Plaintiff reasonably estimates that there is a substantial number of Class members. The members of the Illinois Class are readily identifiable from Defendant's payroll, timekeeping, and personnel records. The Illinois Class comprises at least one hundred (100) members.

109. There is a well-defined community of interest among the Illinois Class members, and common questions of law and fact predominate over any questions affecting individual Class members.

110. Common questions include whether Defendant maintains common timekeeping and payroll practices that fail to record and pay employees for all compensable pre-shift and post-shift work time.

111. Common questions include whether Defendant's PPE, uniform, and plant-access requirements cause manufacturing employees to perform compensable activities before clock-in and after clock-out, including, as applicable, retrieving and putting on required PPE, changing into or out of required uniforms and protective shoes onsite, traveling between designated

locations, waiting as required, and removing and returning PPE; and whether Defendant's rounding practices exclude compensable work performed between employees' actual punches and credited start and stop times, including, for example, shift reports, equipment explanations, production, packaging, process monitoring, remaining on duty while awaiting relief, housekeeping, and cleanup.

112. Common questions include whether Defendant’s timeclock placement, clock-in and clock-out procedures, clock-in window practices, rounding practices, and payroll practices exclude compensable pre-shift and post-shift work time from employees’ paid hours.

113. Common questions include whether Defendant fails to pay all overtime compensation owed under the IMWL.

114. Common questions include whether Defendant fails to include all non-excludable Team Incentive Bonus and ordinary “0.70 Chicago H” compensation in the regular rates and fails to pay the full resulting overtime under the IMWL.

115. Common questions include whether Defendant’s practices are willful, intentional, unreasonable, arbitrary, or in bad faith.

116. Plaintiff’s claims are typical of the claims of the Illinois Class members because Plaintiff and all other Class members suffer damages as a direct and proximate result of Defendant’s common and systemic timekeeping and payroll policies and practices.

117. Plaintiff and the Illinois Class members are subject to the same common practices of Defendant, including the failure to record and pay all compensable pre-shift and post-shift work time.

118. Separate litigation by individual employees would present a risk of inconsistent or varying adjudications.

119. Defendant treats Illinois Class members the same or similarly with respect to the timekeeping and payroll practices challenged in this action.

120. Plaintiff will fairly and adequately protect the interests of the Illinois Class.

121. Plaintiff has retained counsel experienced in the prosecution of wage-and-hour class and collective actions.

122. Neither Plaintiff nor her counsel has interests that are antagonistic to or in conflict with the interests of the Illinois Class members.

123. Defendant's common policies and practices affect Illinois Class members similarly, and Defendant benefits from the same type of unlawful conduct with respect to each Class member.

124. Plaintiff's claims arise from the same legal theories as those of the Illinois Class, making this action manageable and efficient as a Rule 23 class action.

125. Class treatment is superior because Defendant's liability turns on common timekeeping and payroll practices, and resolution of those issues in a single proceeding will conserve judicial resources and avoid inconsistent adjudications.

126. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the damages suffered by individual Class members are relatively small, making individual litigation economically impracticable.

127. Proceeding as a class action will also avoid duplicative litigation and inconsistent results.

128. This action is manageable as a Rule 23 class action, and Plaintiff and her counsel are aware of no unusual difficulties that would preclude class treatment of the claims.

129. Because the requirements of Rule 23(b)(3) are satisfied, certification of the Illinois Class is appropriate.

130. Plaintiff's operator and packaging work, use of the common procedures, required pre-shift and post-shift routines, and receipt of both challenged pay components illustrate the typicality of her claims. Common proof includes the written rounding rules, departmental-clock directions, PPE storage and good manufacturing practice requirements, incentive framework, payroll earnings codes, and Defendant's control over those practices.

**COUNT I**

**Violation of the Fair Labor Standards Act**

**29 U.S.C. § 201 et seq.**

**Failure to Pay Overtime Wages**

(Individual and 29 U.S.C. § 216(b) Collective Action Claims)

131. Plaintiff re-alleges and incorporates the preceding allegations as though fully set forth herein.

132. The FLSA requires Defendant to pay covered, non-exempt employees at least one and one-half times their lawful regular rates for all hours worked over forty (40) in a workweek. 29 U.S.C. § 207(a)(1). Defendant is an employer, and Plaintiff and the FLSA Collective members are employees, within the meaning of the FLSA.

133. Defendant employs manufacturing employees in an enterprise engaged in commerce, and manufacturing employees are non-exempt employees protected by the FLSA. They work more than forty hours in one or more workweeks during the applicable limitations period, including when the compensable pre-shift and post-shift time is included.

134. Defendant fails to pay manufacturing employees the overtime compensation required by 29 U.S.C. § 207(a)(1) because it fails to include all non-excludable Team Incentive Bonus compensation and ordinary "0.70 Chicago H" remuneration in their statutory regular rates and fails to pay the resulting overtime balance after amounts satisfying the federal obligation are taken into account.

135. Defendant also fails to include and pay overtime for compensable work performed before and after manufacturing employees' scheduled shifts. Such work includes, for example, required protective-equipment retrieval and donning, onsite uniform and protective-shoe changes, associated travel and waiting within the compensable workday, and post-clock-out doffing, storage, and PPE return, as applicable. Separately, Defendant's rounding practices exclude compensable work performed between employees' actual punches and their credited start and stop times, including, for example, shift reports, equipment explanations, manufacturing, production, packaging, process monitoring, remaining on duty while awaiting relief, housekeeping, and cleanup. These activities constitute part of the work manufacturing employees are employed or required to perform, as applicable to their assignments and workplace requirements, even when performed before or after their scheduled shifts.

136. The required protective items protect employees in performing chemical-manufacturing work and protect food-grade manufacturing and packaging from contamination. Their required use is integral and indispensable to the manufacturing activities for which employees are employed. Defendant places the required retrieval/donning before its departmental clocks and the required doffing/storage after those clocks. The first compensable protective activity begins, and the last compensable protective activity ends, the continuous workday; associated intervening required travel and waiting form part of that workday. The

separate manufacturing, production, packaging, process-monitoring, and related work duties excluded through rounding constitute principal work activities independently of the claims concerning required clothing and protective-equipment changes.

137. Defendant requires these routines and knows or has reason to know that manufacturing employees perform the work and remain on duty. By omitting compensable time and understating the regular rate, Defendant fails to pay at least one and one-half times the lawful regular rate for all hours worked over forty in a workweek. The claim seeks statutory overtime, rather than enforcement of a higher contractual classification wage or other contractual benefit.

138. Defendant controls the timekeeping rules, supervisory adjustment process, payroll calculations, and earnings codes. Its failure to pay the full statutory overtime is knowing or in reckless disregard of the FLSA's requirements. Plaintiff and the FLSA Collective seek unpaid overtime on both the unpaid-time and regular-rate theories, an equal amount as liquidated damages, reasonable attorneys' fees and costs, and the three-year limitations period for willful violations.

139. Defendant's failure to include all compensable time in hours worked and all non-excludable remuneration in the regular rate violates 29 U.S.C. § 207(a)(1). Plaintiff and the FLSA Collective seek the unpaid statutory overtime balance after accounting for amounts satisfying the federal obligation, including credits permitted under 29 U.S.C. § 207(h), together with the remedies provided by 29 U.S.C. § 216(b).

**COUNT II**

**Violation of the Illinois Minimum Wage Law**

**820 ILCS 105/1 et seq.**

**Failure to Pay Overtime Wages**

(Brought Individually and on a Class Basis Pursuant to Fed. R. Civ. P. 23)

140. Plaintiff re-alleges and incorporates the preceding factual, jurisdictional, collective, and class allegations as though fully set forth herein.

141. The IMWL requires Defendant to pay covered employees at least one and one-half times their lawful regular rates for all hours worked over forty (40) in a workweek. 820 ILCS 105/4a. Defendant is the employer of Plaintiff and the Illinois Class members, who are its employees within the meaning of the IMWL.

142. Defendant employs manufacturing employees in Illinois as non-exempt hourly employees covered by the IMWL. Manufacturing employees work more than forty hours in workweeks when all required onsite and working time is included.

143. Defendant fails to include all compensable pre-shift and post-shift time in manufacturing employees' hours worked. Such work includes, for example, required entrance and protective-equipment retrieval and donning, onsite uniform and protective-shoe changes, associated travel and waiting within the compensable workday, and post-clock-out doffing, storage, PPE return, and exit activities, as applicable. Separately, Defendant's rounding practices exclude compensable work performed between employees' actual punches and their credited start and stop times, including, for example, shift reports, equipment explanations, manufacturing, production, packaging, process monitoring, remaining on duty while awaiting relief, housekeeping, and cleanup. These activities constitute part of the work manufacturing

employees are employed or required to perform, as applicable to their assignments and workplace requirements, even when performed before or after their scheduled shifts.

144. These activities and intervals constitute hours worked under Illinois law because Defendant requires manufacturing employees to be on duty or on its premises for them, or requires or permits the work. Defendant's scheduled paid shift and timeclock boundaries do not define the full Illinois workday. The Illinois claim is based on the IMWL and its regulations, independently of federal preliminary/postliminary exclusions and any narrower contractual treatment of the time.

145. Defendant also fails to include all non-excludable Team Incentive Bonus and ordinary "0.70 Chicago H" remuneration in manufacturing employees' regular rates and fails to pay all overtime due at the resulting rates. The same two compensation theories alleged in Count I apply here under the IMWL. For Illinois overtime, the hours-worked calculation also includes the additional compensable time alleged in this count.

146. By excluding required time and understating the regular rate, Defendant fails to pay manufacturing employees at least one and one-half times their lawful regular rates for all hours worked over forty in a workweek. Plaintiff and the Illinois Class seek treble the amount of underpayments, monthly damages of five percent on unpaid amounts, reasonable attorneys' fees and costs, and other relief authorized by 820 ILCS 105/12(a), without duplicating unpaid wages included in the treble recovery or overlapping federal wage recovery.

147. The required onsite time and work described above constitute hours worked under 56 Ill. Admin. Code § 210.110. The IMWL does not incorporate the federal exclusion for preliminary and postliminary activities. See Johnson v. Amazon.com Services, LLC, 2026 IL 132016, ¶¶ 14–21, 23. The regular-rate obligations arise under the IMWL and 56 Ill. Admin.

Code §§ 210.410–.420, independently of any contractual promise to pay for the time or a higher contractual wage.

148. Defendant's conduct is willful, intentional, unreasonable, arbitrary, and in bad faith. Plaintiff and the Illinois Class seek the statutory overtime balance required under Illinois law after accounting for amounts satisfying that obligation, and the remedies authorized by 820 ILCS 105/12(a).

## RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in her favor and against Defendant, and grant the following relief:

A. Certify this action as a collective action pursuant to 29 U.S.C. § 216(b) and authorize notice to similarly situated employees informing them of their right to opt in;

B. Certify the Illinois Class under Federal Rule of Civil Procedure 23(b)(3) and direct appropriate class notice;

C. Designate Plaintiff as representative of the FLSA Collective and Illinois Class and designate Plaintiff's counsel as Class Counsel;

D. Declare that Defendant violated the FLSA and the IMWL as alleged herein;

E. Award Plaintiff and the FLSA Collective all unpaid statutory overtime attributable to compensable pre-shift and post-shift work, work removed by rounding, and the failure to pay the full overtime attributable to non-excludable Team Incentive Bonus and ordinary "0.70 Chicago H" compensation, together with an equal amount as FLSA liquidated damages;

F. Award Plaintiff and the Illinois Class treble the overtime underpayments attributable to required unpaid time and the two challenged pay components, plus statutory damages of five percent (5%) of the underpayments for each month following the date payment was due during which the underpayments remain unpaid, under 820 ILCS 105/12(a);

G. Allocate overlapping wage recoveries to avoid double recovery, including counting the unpaid wages only once within the Illinois treble recovery;

H. Award pre-judgment and post-judgment interest to the extent permitted by law and without duplicating other recovery;

I. Award reasonable attorneys' fees, costs, and authorized expenses under the FLSA and IMWL; and

J. Award such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Monica Hampton, individually and on behalf of all other FLSA Collective members and Illinois Class members, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled claims.

Respectfully submitted,

Dated: November 6, 2026

**BROWN, LLC**
By: /s/ Nicholas Conlon
Nicholas Conlon (034052013)
Michael Rinderman (admitted Pro Hac Vice)
111 Town Square Place, Suite 400
Jersey City, NJ 07310
T: (877) 561-0000
F: (855) 582-5279
nicholasconlon@jtblawgroup.com
michael.rinderman@jtblawgroup.com
Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2026, I electronically filed the foregoing First Amended Collective and Class Action Complaint with the Clerk of the United States District Court for the District of New Jersey through the Court's CM/ECF system, which provided electronic notice and service upon all counsel of record registered to receive electronic service in this action.

Dated: November 6, 2026

By: /s/ Nicholas Conlon
Nicholas Conlon (034052013)